IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE MAYOR AND CITY COUNCIL OF BALTIMORE, | * * * | |
| Plaintiff | * | |
| v. | * * | CIVIL No. 12-614-JKB |
| UNISYS CORPORATION, | * * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

The Mayor and City Council of Baltimore ("Plaintiff") brought this suit against the Unisys Corporation ("Defendant"), seeking compensatory and punitive damages for alleged breaches of contract and express warranties, unjust enrichment, negligent misrepresentation, and intentional misrepresentation. Now pending before the Court is Defendant's Partial Motion to Dismiss (ECF No. 11), which seeks dismissal of the unjust enrichment, misrepresentation, and punitive damage claims. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons set forth below, the motion will be GRANTED IN PART (with respect to Plaintiff's claims of unjust enrichment and negligent misrepresentation and part of its claim of intentional misrepresentation) and DENIED IN PART (with respect to Plaintiff's request for punitive damages and part of its claim of intentional misrepresentation).

**I.    BACKGROUND**

Plaintiff alleges that in 2002 it entered a contract with Defendant in which it agreed to pay approximately $7 million for the development and installation of a software package,

referred to as an "Integrated Property Tax System" or "IPTS," which would integrate a number of functions and databases related to tax assessment and billing that had previously been maintained as separate programs.  The contract allegedly provided that Defendant would have the system ready to "go live" by November 1, 2003.  However, about six months after beginning the project, Defendant told Plaintiff that it would not be able to meet the November deadline and suggested a new deadline of June of 2004.  But, Defendant allegedly failed to meet that deadline, too, as well as several additional extended "GO-live" deadlines that it subsequently agreed to over the next several years.  By December of 2010, seven years had elapsed since the contracted-for "GO-live" date and Plaintiff had allegedly paid Defendant over $8 million, but the system was still not ready.  In March of 2011, Plaintiff declared Defendant to be in default and in breach of the contract.  In response to the notice, Defendant allegedly told Plaintiff that it had successfully fixed all of the problems with the system that had caused the previous delays and offered "test scripts" as purported evidence that the issues had been resolved and that the system was working.  Plaintiff claims that, in reliance on this representation, it undertook further testing of the system at its own expense, but that the system failed the tests in several key respects.

Shortly after the testing period was completed, on January 18, 2012, Plaintiff filed the instant complaint in the Circuit Court for Baltimore City.  Defendant removed the case to this Court, and on March 2, 2012, it filed an answer to the complaint as well as the instant motion to dismiss, which is now ripe.

## II.     LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their]

face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 129 S.Ct. at 1950.

### III.  ANALYSIS

#### A.  Count III: Unjust Enrichment

Count III of the complaint alleges that Defendant has been unjustly enriched by accepting payment from Plaintiff while failing to deliver a working product. Defendant has moved to dismiss this claim on the grounds that an action for unjust enrichment cannot lie where, as here, there is an express contract between the parties. Defendant responds that it can maintain its unjust enrichment claim, despite the existence of an express contract, because: (1) Defendant's conduct was fraudulent; and, (2) the contract does not cover all of the subject-matter contained in the claim. The Court finds that Defendant is correct and that Plaintiff has failed to state a claim of unjust enrichment.

The law is well-settled in Maryland, and elsewhere, that an action for unjust enrichment, which is a creature of equity, generally cannot be maintained when the subject matter of the claim is governed by an express contract. *See Jones v. Koons Automotive, Inc.*, 752 F.Supp.2d 670, 688; *Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560 (Md. 2008). But, there are two

exceptions to this rule: one is where the plaintiff adduces evidence of fraud or bad faith on the part of the defendant, the other where the contract between the parties does not govern the entire subject-matter of the claim. *Jones*, 752 F.Supp.2d at 688. Neither exception is applicable here.

First, the fraud exception does not apply to Plaintiff's claim because that exception requires that a plaintiff allege fraud in the formation of the contract, whereas Plaintiff has only alleged (or at least has only adequately alleged) that certain aspects of Defendant's performance of the contract were fraudulent. *See Kwang Dong Pharmaceutical Co. v. Han*, 205 F.Supp.2d 489, 497 (D. Md. 2002).

Second, the subject-matter exception does not apply because, although some of Plaintiff's allegations relate to subject-matter outside the contract, there is no obvious connection between those allegations and the unjust enrichment claim. Indeed, Count III of the complaint does not appear, on its face, to refer to any extra-contractual subject-matter at all. The single substantive paragraph of that Count reads:

> Unisys has been unjustly enriched at Baltimore City's expense for accepting the City's monetary payments of $8,505,522.86 but failed to deliver the fully functional and integrated tax system in a serviceable condition. Unisys has been unjustly enriched at the City's expense for accepting the City's monetary payments for service fees, while failing to complete the project and meet the recognized objectives of the City for which those services were being rendered. The City therefore seeks an accounting and disgorgement from Unisys of all monies received by Unisys from the City arising out of or related to the Integrated Tax System project.

(Complaint, ¶ 40, ECF No. 2). Plaintiff argues in its brief, however, that the unjust enrichment claim also encompasses its allegation that in 2011 it undertook extra-contractual testing of the system at its own expense in reliance on Defendant's allegedly false representation that the system was operational. (Pl.'s Br. at 4, ECF No. 12). But, Plaintiff does not allege that the expense it incurred took the form of a payment to, or conferral of any other benefit on,

Defendant. *See* RESTATEMENT (SECOND) OF CONTRACTS § 370 (1981) ("[A] party's expenditures … that do not confer a benefit on the other party do not give rise to a restitution interest."). The conferral of a benefit is the first element of a cause of action for unjust enrichment. *See County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 95 n. 7, 747 A.2d 600 (2000). Thus, the extra-contractual subject-matter alleged in the complaint does not support Plaintiff's unjust enrichment claim.

For these reasons, Count III of the complaint will be dismissed.

### B.    Count IV: Negligent Misrepresentation

Count IV of the complaint alleges that Defendant made several negligent misrepresentations about its ability to complete the contract and the progress that it had made at various points in its performance. Defendant argues that this claim should be dismissed because the parties' contractual relationship did not give rise to a tort duty, which is required to sustain a claim of negligent misrepresentation. Plaintiff argues that the relationship did create such a duty. As explained below, the Court finds that Defendant is correct and that Plaintiff has failed to state a claim of negligent misrepresentation.

A plaintiff seeking to recover for economic loss due to a defendant's alleged negligent misrepresentations "must prove that the defendant owed him or her a duty of care by demonstrating an intimate nexus between them." *Griesi v. Atl. Gen. Hop. Corp.* 360 Md. 1, 12-13 (2000). *See also Baltimore County v. Cigna Healthcare*, 238 F.App'x. 914, 922 (4th Cir. 2007) (citing *Griesi,* 756 A.2d 548, 553). Importantly, while this "intimate nexus" can be established through contractual privity or its equivalent, a contractual obligation alone does not create a duty in tort. *Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*, Civil Action No. DKC 2005-2882, 2006 WL 2572474 at *19 (D. Md. Sept. 5, 2006) (citing *Jaques v. First Nat'l*

*Bank of Md.*, 307 Md. 527, 534-35, 540-41 (1986)). Indeed, the Fourth Circuit "has made clear that [courts] will not countenance a negligent misrepresentation claim premised only upon a breach of a contractual obligation when the contract does not provide for the bringing of such a claim and the parties are equally sophisticated." *Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, L.P.*, 37 F.App'x. 677, 680 (4th Cir. 2002) (citing *Martin Marietta Corp. v. Int'l Telecomm, Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992)) (internal quotation marks omitted). And, perhaps most germane to this case, "[we] and other courts have held that a party which has entered into a contract for the sale of goods may not recover in tort for purely economic losses arising out of the quality or performance of the goods." *Rotorex Co., Inc. v. Kingsbury Corp.*, 42 F.Supp.2d 563, 575 (D. Md. 1999) (citing *In re Lone Star Indus. Inc., Concrete R.R. Cross Ties Litigation,* 776 F.Supp. 206, 221 (D.Md.1991); *Morris v. Osmose Wood Preserving,* 340 Md. 519, 531, 667 A.2d 624 (1995)).

Here, Plaintiff has failed to allege that its relationship with Defendant consisted of anything other than an arm's length contract for the design and sale of goods between equally sophisticated parties. It argues, however, that courts have found an "intimate nexus" between parties in similar situations, citing the following cases for support: *Giant Food v. Ice King*, 74 Md. App. 183, 189 (1988); *Walpert, Smullian, & Blumenthal v. Katz*, 361 Md. 645, 668 (2000); *Baltimore County v. Cigna Healthcare*, 238 F.App'x. 914, 923 (4th Cir. 2007); *Cooper v. Berkshire Life Insurance Company*, 148 Md. App. 41, 71 (2002). These cases, however, do not help Plaintiff. *Giant Foods* involved alleged negligent misrepresentations during negotiations over a contract that never materialized; *Walpert* involved an analysis specific to the accountant/client relationship; *Cigna* involved allegedly negligent omissions by an individual employee of a corporate entity from which the plaintiff had purchased insurance policies; and

*Cooper* involved an analysis specific to the purchase of life insurance. None of these cases are factually on point.

The facts of *Rotorex Co., Inc. v. Kingsbury Corp.*, 42 F.Supp.2d 563 (D. Md. 1999), on the other hand, are nearly identical to those alleged here. In that case, the plaintiff had contracted with defendant for the design and installation of an automated assembly line. As in this case, the parties engaged in extensive negotiation before executing the contract. Also as in this case, problems with the system caused numerous delays over the course of the contract, and the parties engaged in extensive testing to try to resolve them. Based on those tests, the plaintiff finally accepted delivery of the system, but after installation it continued to have problems. *Id*. at 567-68. Just as Plaintiff has done in this case, the plaintiff in *Rotorex* sued the defendant, alleging, among other things, that it had made a negligent representation in asserting that it would be able to design and manufacture the product described in the contract. The Court held unequivocally that that claim could not stand, writing that "a party which has entered into a contract for the sale of goods may not recover in tort for purely economic losses arising out of the quality or performance of the goods." *Id*. at 575 (citing *In re Lone Star Indus. Inc., Concrete R.R. Cross Ties Litigation,* 776 F.Supp. 206, 221 (D.Md.1991); *Morris v. Osmose Wood Preserving,* 340 Md. 519, 531, 667 A.2d 624 (1995)). It further explained that:

> In this particular case, sophisticated parties in a commercial transaction entered into a contract containing detailed provisions. After lengthy negotiations, the parties allocated their risks and limited their remedies. In a case involving a commercial transaction such as the one at issue here, the remedies provided by the Uniform Commercial Code and in the contract are exclusive.

*Id*. (citing *Lone Star,* 776 F.Supp. at 222; *Wood Products, Inc. v. CMI Corp.,* 651 F.Supp. 641, 648 (D.Md.1986)). In view of the obvious parallel between the facts and claims of *Rotorex* and

those of this case, the Court finds that the *Rotorex* holding controls and that Plaintiff cannot maintain an action for negligent misrepresentation.

### C. Count V: Intentional Misrepresentation

Count V of the complaint alleges that Defendant made several intentional misrepresentations to Plaintiff. Defendant argues that this claim must be dismissed because Plaintiff has failed to allege each of the elements of intentional misrepresentation with the level of specificity required by FED. R. CIV. P. 9(b), which applies to all actions sounding in fraud. Plaintiff argues that its pleading is sufficient. As explained below, the Court finds that Plaintiff is correct and that it has stated a viable claim of intentional misrepresentation.

To state a *prima facie* claim of intentional misrepresentation, a plaintiff must plead the following elements:

> (1) the defendant made a false representation to the plaintiff; (2) the falsity was either known to the defendant or the representation was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding plaintiff; (4) the plaintiff relied on the misrepresentation and [had] the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.

*Jenkins v. PBG, Inc.*, 268 F.Supp.2d 593, 597 (D. Md. 2003). Also, because intentional misrepresentation is a form of fraud, the plaintiff must plead the circumstances of the alleged misrepresentation with the specificity required by FED. R. CIV. P. 9(b). This includes "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5 FED. PRAC. & PROC. CIV. § 1297, at 590 (2d ed. 1990)). Rule 9(b) allows a plaintiff to plead elements of knowledge and intent "generally," though the allegations must still meet the ordinary

plausibility standard required of all pleadings.  *See Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

In its brief, Plaintiff identifies paragraphs 22, 51-53, and 55 of the complaint as containing the allegations necessary to sustain its claim of intentional misrepresentation.  Those paragraphs read:

> 22.   In response to the City's default notice, Unisys represented on a number of occasions that it had fixed all of the 217 issues.  To prove its point, Unisys provided the City with a binder of test scripts that purportedly showed that the 217 previously identified A issues would run without any issues and demanded that the City accept the system as operational.  The City relied upon Unisys's representations and allowed Unisys the opportunity to demonstrate that it had cured all the defaults and the defects in the system.  Accordingly, the City and Unisys agreed to conduct limited joint validation testing, beginning on October 24, 2011 and lasting until November 4, 2011.  The parties jointly negotiated an agreed upon testing protocol for the joint validation testing, and the type of data that would be used in the testing.
>
> 51.   The representations made by Unisys on or about March 22, 2011, that it had resolved all of the 217 previously identified critical issues constituted assertions of a false representation of a material fact to the City.  Subsequent to March 22, 2011, Unisys represented to the City that 177 of the 181 test scripts associated with the critical issues would be completed without fault.
>
> 52.   Unisys' repeated communications and representations to the City and to Baltimore City citizens that it had and could provide the City with a fully functioning and integrated property tax system were false when made, or the representations were made with reckless disregard for the truth of the matters stated.
>
> 53.   Unisys owed a duty to the City to disclose that it had not resolved all of the 217 previously identified critical issues, that the test scripts associated with the critical issues would be completed without fault, and that it was unable to and had never provided the city with an integrated property tax system.
>
> 55.   Unisys intended to deceive the City by repeatedly representing to the City that it had corrected all of the deficiencies of the tax system. As a result of these false representations, the City and Unisys conducted a joint validation test on the agreed upon critical issues, resulting in numerous agreed upon key capability failures and an unaccepted test rate failure.

Although many of the allegations contained in these paragraphs are vague or conclusory, the Court finds that they adequately plead the minimum facts necessary to survive dismissal.

First, Plaintiff adequately alleges that Defendant made a false representation. The complaint clearly states that on or about March 22, 2011, Defendant told Plaintiff that it had resolved all of the previously identified problems with the system, and offered test scripts as evidence.[1] This allegation constitutes the first element of an intentional misrepresentation claim, and Plaintiff has supplied enough detail to meet the requirements of Rule 9(b) because: (1) the specific date and content of the misrepresentation are clearly alleged; (2) the entity responsible for the misrepresentation is identified; and (3) it is clear, viewing the complaint as a whole, that the alleged motivation for the misrepresentation was Defendant's desire to trick Plaintiff into accepting a defective product, or at least to buy more time to meet its contractual obligations. Defendant objects that Plaintiff has not identified the specific individual(s) who allegedly made the misrepresentation. Courts in this Circuit have previously found, however, that where a misrepresentation is attributed to a corporate defendant, the Plaintiff does not necessarily have to identify the individual agent who made the alleged false statement. *See, e.g., Nahigian v. Juno Loudoun, LLC*, 684 F.Supp.2d 731, 738-39 (E.D. Va. 2010), *affirmed in part and reversed in part on other grounds by* 677 F.3d 579 (4th Cir. 2012); *Scott v. GMAC Mortg., LLC*, Civil No. 3:10cv00024, 2010 WL 3340518 at *8 (W.D. Va. August 25, 2010); *ISP Technologies, Inc. v. Capricorn Pharma, Inc.*, Civil No. WDQ-11-0023, 2011 WL 2600674 at *6 n.8 (D. Md. June 28, 2011). Here, the Court finds that Plaintiff's allegations are sufficiently detailed to meet the objectives of Rule 9(b), which are to put Defendant on notice of the conduct for which it must formulate a defense, to ensure that the claim is neither frivolous nor based wholly on facts learned through discovery, and to protect Defendant from unwarranted harm to its reputation.

---

[1] The other alleged misrepresentations are too vague to meet the specificity requirements of Rule 9(b).

10

*See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). The Court therefore does not find it necessary for Plaintiff to identify the individual agents responsible for the alleged misrepresentation, though this would certainly have been the better practice.

Next, Plaintiff has clearly alleged the second and third elements of an intentional misrepresentation claim, *i.e.* that Defendant knew that its statement was false and that it made the statement with the intent to defraud. Defendant objects that Plaintiff has not alleged sufficient facts to warrant an inference that it possessed such knowledge or intent. The Court disagrees. As explained above, the particularity requirements of Rule 9(b) do not apply to the elements of knowledge and intent, which may be alleged "generally." This does not, of course, relieve Plaintiff of the burden of meeting the minimal plausibility standards that are required of all pleadings. But, viewing the complaint as a whole, the Court finds that Plaintiff has met this standard. Specifically, the Court finds it plausible that a business in Defendant's position, having been held in default and in breach of a contract, might resort to lulling tactics such as those alleged in the complaint in order to salvage the contract.

Finally, Plaintiff clearly alleges that it relied on the alleged misrepresentation in agreeing to undertake further testing of the system, and that it had to pay for that testing. This establishes the fourth and fifth elements of an intentional misrepresentation claim. With respect to the fourth element, a Plaintiff must plead not only that he relied on the alleged misrepresentation, but that he had a right to rely on it. *See Bank of America, N.A. v. Jill P Mitchell Living Trust*, 822 F.Supp.2d 505, 536. Under Maryland law, a party has a right to rely on a statement if he reasonably believes in the "full truth" of it. *Id*. Here, the Court finds that Plaintiff's allegations raise a plausible inference that it fully believed Defendant's alleged statement that it had resolved

all previously identified problems with the system. This is because the allegation is precisely that Defendant offered Plaintiff purported documentary evidence of its success (in the form of test scripts) to overcome what would undoubtedly have otherwise been a skeptical response from Plaintiff, given the alleged history of the performance of the contract. The Court therefore finds that Plaintiff has adequately pled the reliance element of its claim. Finally, the cost of the additional testing, if fraudulently induced, is a compensable injury which establishes the fifth and last element of the claim.

For these reasons, Count V of the complaint will be allowed to stand with respect to Plaintiff's allegation that Defendant intentionally misrepresented to it on or about March 22, 2011, that it had resolved 217 previously identified issues with the system and that this was shown in test scripts, which it offered to Plaintiff as evidence. Claims of other alleged misrepresentations contained in Count V will be dismissed.

### D.     Punitive Damages

In its Prayer for Relief, Plaintiff requests, among other things, an award of punitive damages. Defendant argues that this "claim" should be dismissed because Plaintiff has not adequately alleged the malicious intent that is required to trigger punitive damages. The Court, however, finds that Plaintiff has adequately pled malice in its claim for intentional misrepresentation.

Under Maryland law, a plaintiff cannot recover punitive damages for breach of contract, even if the breach is shown to be malicious. *Biktasheva v. Red Square Sports, Inc.*, 366 F.Supp.2d 289, 295 (D. Md. 2005) (citation omitted). Rather, punitive damages are available only in tort actions, and only where the plaintiff can show that the defendant acted with "actual malice." *Id*. (citation omitted). In an action for fraud, "the defendant's actual knowledge of

falsity, coupled with his intent to deceive the plaintiff by means of the false statement, constitutes the actual malice required to support an award of punitive damages." *Ellerin v. Fairfax Sav., F.S.B.,* 337 Md. 216, 652 A.2d 1117, 1126 (1995).  The Court has already found that Plaintiff has sufficiently pled these elements in its claim of intentional misrepresentation.  Plaintiff's request for punitive damages will therefore be allowed to stand.

### E. Leave to File Amended Complaint

In its brief, Plaintiff urges that if the Court finds any part of the complaint to be deficient it should give Plaintiff the opportunity to file an amended complaint.  Before the Court can consider whether to allow Plaintiff to amend, however, Plaintiff must file a proper motion including, among other things, a copy of the proposed amendment.  *See* FED. R. CIV. P. 15(b); Local Rule 103.6(a).  The Court will, however, make its dismissal without prejudice for a period of fourteen days, during which time Plaintiff may file a motion for leave to amend, if it so chooses.

### IV. CONCLUSION

Accordingly, an order shall issue GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (ECF No. 11) as described above.

Dated this 16th day of August, 2012

BY THE COURT:

/s/
James K. Bredar
United States District Judge